UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HELEN SILVERS,

                          Plaintiff,

             -vs-                                        13-CV-1025-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (KENNETH HILLER, ESQ., of Counsel), Amherst, New York, for Plaintiff.

                         WILLIAM J. HOCHUL, JR., United States Attorney (VERNON NORWOOD, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 2, 2014 (Item 17).

Plaintiff Helen Silvers initiated this action on October 7, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 10, 15). For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

**BACKGROUND**

Plaintiff was born on February, 15, 1960 (Tr. 269).[1]  She filed applications for SSDI and SSI benefits with a protective filing date of June 2007, alleging disability due to mental issues, diabetes, chemical imbalance, high blood pressure, high cholesterol, and sinus problems, with an onset date of April 30, 2004 (Tr. 269, 272).  These claims were denied administratively on January 24, 2008 (*see* Tr. 146).  Plaintiff requested a hearing, which was held on September 23, 2009, before Administrative Law Judge ("ALJ") Bruce Mazzarella (Tr. 94-140).  Plaintiff appeared and testified at the hearing, and was represented by non-attorney representative Bruce Caulfield.  Vocational expert ("VE") Jay Steinbrenner also appeared and testified.

On January 13, 2010, ALJ Mazzarella issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 143-55).  Plaintiff appealed, and on June 10, 2011 the Appeals Council vacated the ALJ's decision and remanded the case to the Commissioner for further proceedings (*see* Tr. 210-13).  A supplemental hearing was held before ALJ Mazzarella on November 9, 2011 (Tr. 42-93).  Plaintiff again appeared and testified, and was represented by attorney Kevin Canali.  VE Steinbrenner also testified.

On December 12, 2011, ALJ Mazzarella issued a decision once again finding that plaintiff was not disabled (Tr. 15-31). Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified as seizure disorder versus

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 8).

pseudoseizures, depressive disorder, diabetes mellitus, and foot pain), while "severe," did not meet or medically equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 20-22). The ALJ discussed the evidence in the record regarding plaintiff's medically determinable impairments–including reports and opinions from treating and consultative medical sources, and plaintiff's hearing testimony and statements about the limiting effects of her impairments–but found "a surprising lack of corroboration" for plaintiff's self-reported seizure activity (Tr. 26). Based upon his view of the evidence, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with certain specified exertional and/or nonexertional limitations. (R. 22-30).[2] Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and the same RFC and limitations would be able to perform the physical and mental demands of plaintiff's past relevant work as a hotel housekeeper as it is generally performed throughout the national economy (*see* Tr. 85-92), the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 30-31).

The ALJ's decision became the final decision of the Commissioner on August 22, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

---

[2]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves mostly sitting with some pushing and pulling of arm or leg controls. To be capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, then she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods. *Id.*

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ improperly assessed plaintiff's RFC by failing to give controlling weight to the opinion of Dr. James Matthews, plaintiff's treating primary physician, as to the nature and effect of plaintiff's impairments, and by substituting his own biased judgment for the competent medical evidence and opinions of treating sources regarding the disabling effects of plaintiff's seizure activity. *See* Items 10-1, 16. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 15.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the


Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

**II.     Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or

mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ

determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.   The ALJ's Disability Determination

In this case, ALJ Mazzarella determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since April 30, 2004, the alleged

onset date (Tr. 20). At step two, the ALJ determined that plaintiff's impairments are "severe" as that term is defined in the regulations because they "cause more than minimal limitations in her ability to perform basic work activities" (Tr. 21). At step three, the ALJ found that plaintiff's seizure disorder did not meet or equal the criteria of Listings 11.02 (*Epilepsy–convulsive*) or 11.03 (*Epilepsy–nonconvulsive*), noting plaintiff's varying descriptions of her seizure activity in her statements to treating and consultative sources (Tr. 21). The ALJ also found that plaintiff's mental impairment did not meet or equal the criteria of Listing 12.04 (*Affective Disorders*), noting the lack of evidence of any marked restrictions in the areas of functioning identified in those criteria (Tr. 21-22).

The ALJ then found that plaintiff had the RFC for a range of light work, subject to the following functional limitations: plaintiff could sit, stand and/or walk throughout an eight-hour workday with only normal breaks; she could lift and carry twenty pounds occasionally and ten pounds frequently; she should not be exposed to unprotected heights and/or unguarded dangerous machinery; she should not operate motorized vehicles; and was limited to simple, repetitive and routine work in a low contact, low stress environment (Tr. 22). In making this finding, the ALJ noted his reliance on the assessment of plaintiff's treating neurologist M. Reza Samie, who first saw plaintiff on May 12, 2008 for evaluation of plaintiff's seizure disorder. At that time plaintiff reported severe headaches and occasional seizures with loss of consciousness, incontinence, and tongue biting. Dr. Samie placed plaintiff on medication and ordered MRI and EEG testing (Tr. 565-66). Dr. Samie's impression of the EEG results indicated "[t]he presence of sharp waves and possible discharges in the left temporal area … suggestive of epileptogenic focus within that region" (Tr. 563). The MRI results were reported as generally unremarkable (Tr. 564).

On follow-up evaluations through December 2010, Dr. Samie consistently reported that plaintiff's neurological condition was stable and improved with medication, although she continued to complain of occasional seizures with loss of consciousness, incontinence, and tongue biting (Tr. 880-90). On December 9, 2010, Dr. Samie reported that plaintiff "may work but was advised against driving, height, heavy machinery, or swimming alone" (Tr. 880). On June 24, 2011, Dr. Samie again noted that, although improved, plaintiff continued to report headaches, seizures, and stress. Dr. Samie assessed peripheral neuropathy, seizure disorder, and headache disorder (Tr. 878).

ALJ Mazzarella also expressly relied on a "clarification letter" dated June 22, 2011, submitted by Dr. Matthews in response to a request from the New York State Division of Disability Determinations for further explanation of the work-related limitations of function indicated in medical reports previously submitted to the agency (*see* Tr. 782, 83). Dr. Matthews stated in the clarification letter that plaintiff "has a history of active seizure disorder and uncontrolled diabetes. She is therefore restricted from operating machinery, climbing ladders, and working at heights as these would put her and others at risk of injury should a seizure or hypoglycemic event occur" (Tr. 783).

The ALJ also relied on the report of a consultative psychiatric evaluation performed by Renee Baskin, Ph.D., on June 3, 2011 (772-76). Dr. Baskin noted plaintiff's moderate limitations in the areas of maintaining attention and concentration; maintaining a regular schedule; learning new tasks; performing complex tasks independently; making appropriate decisions; relating adequately with others; and appropriately dealing with stress (Tr. 775). Dr. Baskin's diagnosis was depressive disorder, anxiety disorder, seizure disorder, high blood pressure, diabetes, and a foot problem (*id.*). In Dr. Baskin's opinion,

the results of his consultative examination were "consistent with stress-related and psychiatric problems and this may interfere with [plaintiff]'s ability to function on a daily basis" (*id.*).

Finally, the ALJ noted his reliance on a "Psychiatric Review Technique" form dated June 29, 2011, completed by a state agency review psychologist (C. Butensky) (Tr. 789-802). The reviewer's narrative reiterated the functional limitation findings made by Dr. Baskin, and concluded that plaintiff "has a moderate psychiatric impairment that does not meet or equal any of the adult mental listings. [She] retains the capacity to perform simple job tasks; she has a mild to moderate limitation in her ability to sustain attention/concentration, adapt to changes in a routine work setting, and interact appropriately with coworkers and supervisors" (Tr. 801).

Based on this assessment, and relying on the VE's testimony, ALJ Mazzarella determined that plaintiff was able to perform her past relevant work as a hotel housekeeper (Tr. 30-31). Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act at any time from the alleged onset date of April 30, 2004 through the date of the decision, concluding the sequential evaluation at step four.

## IV.   Plaintiff's Motion: Treating Physician's Opinion

Plaintiff contends that the Commissioner's determination must be reversed because the ALJ failed to accord appropriate weight to the opinion of Dr. Matthews, plaintiff's treating primary care physician, as reported in a Physical Residual Functional Capacity ("PRFC") questionnaire completed by Dr. Matthews on October 24, 2011, shortly before plaintiff's second ALJ hearing (Tr. 904-08). Dr. Matthews indicated that at that time plaintiff

continued to suffer from seizures, as well as diabetes, hypertension, hyperlipidemia, and asthma (Tr. 904). She was being treated by medication causing sedation (*id.*). She was not a malingerer (Tr. 905). Her seizures and other symptoms were reported as "constantly" severe enough to interfere with attention and concentration needed to perform even simple work tasks, but Dr. Matthews indicated that plaintiff was capable of work in a low stress environment (*id.*). She could sit for an hour at a time, and stand for thirty minutes at a time (*id.*). She could sit for four hours a day, and stand/walk for less than two hours a day (Tr. 906). She would need to be able to shift positions at will and take unscheduled breaks during an 8-hour workday (*id.*). She could occasionally lift up to 10 lbs., and could never lift 20 lbs. or more (*id.*). She could rarely twist, stoop, bend, or climb stairs, and she could never crouch, squat, or climb ladders (Tr. 907). Her impairments were likely to cause "good days" and "bad days," and Dr. Matthews remarked that plaintiff's seizure disorder was "not well controlled" (*id.*).

In the court's view, the responses on this questionnaire reflect Dr. Matthews' opinion as plaintiff's treating physician that plaintiff's seizure disorder and other impairments caused functional limitations inconsistent with the ALJ's RFC assessment. Under the Social Security regulations and rulings, and the federal case law, the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R.

§§ 404.1527(c)(2), 416.927(c)(2);[3] *see also Rosa*, 168 F.3d at 78-79. This is because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*

If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also Terreri v. Astrue*, 2009 WL 749860, at *3 (W.D.N.Y. Mar. 18 ,2009). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79; *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

---

[3] 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012, with the result that subsection (d) was re-designated as subsection (c), without substantive change. With regard to this case, the ALJ's decision was issued before the effective date of the amendment, and the Appeals Council's ruling was issued after the effective date. For continuity, the court will herein refer to 20 C.F.R. §§ 404.1527 and 416.927(c), presently in effect.

> . . . is not fully favorable, *e.g.*, is a denial . . . the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). This requirement greatly assists judicial review of the Commissioner's decision, and "let[s] claimants understand the disposition of their cases." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). Indeed, the Second Circuit has instructed that the courts should "not to hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion" or when the ALJ's opinion does not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

In this case, ALJ Mazzarella gave little weight to Dr. Matthews' opinion, as reported on the PRFC questionnaire, that plaintiff's seizure disorder was not well controlled and was severe enough to constantly interfere with her ability to perform even simple work-related activities. The ALJ found this opinion to be inconsistent with the findings of consultative physician Nikita Dave, who conducted a physical examination of plaintiff on June 13, 2011, and concluded that plaintiff "would not be able to climb ladders, work with heights and heavy, sharp, dangerous equipment and machinery due to seizures" which were "not well controlled" and caused "moderate limitation for all activity" (Tr. 780). The ALJ also found Dr. Matthews' opinion to be inconsistent with his own "clarification letter" of June 22, 2011, in which Dr. Matthews indicated that plaintiff was restricted only from operating machinery, climbing ladders, and working at heights (Tr. 28).

The ALJ also gave "greater weight" to the results of a neurological assessment performed in 2007 by Dr. L.N. Hopkins at the University of Buffalo Neurosurgery Department, upon referral from Dr. Matthews, indicating that an EEG taken in September 2007 "showed no epileptic activity" (Tr. 535).[4] However, this assessment was based on a single physical examination by Dr. Hopkins in July 2007, and was made without the benefit of the June 2008 EEG results, discussed above, which were "suggestive of epileptogenic focus" (Tr. 563). The record further reveals that, in late 2008 and early 2009, Dr. Matthews consistently reported plaintiff's employability status to disability reviewers and insurance carriers as "totally disabled and unable to do any work" for a period of twelve months or longer, due to seizures, epilepsy, and depression as confirmed by an "abnormal EEG" (Tr. 597; *see also* Tr. 568, 593-96). Viewed in this light, the ALJ's failure to provide any further reasons for giving more weight to Dr. Hopkins' singular assessment than he gave to Dr. Matthews' opinions on the disabling effects of plaintiff's seizure and depressive disorders cannot be reconciled with the requirements of the regulations and rulings governing evaluation of medical source opinion evidence.

Dr. Matthews' opinions find further support in the report of Rachel Hill, Ph.D., who conducted a consultative psychiatric evaluation of plaintiff on October 27, 2009 (Tr. 640-48). Dr. Hill concluded that plaintiff was able to follow and understand simple directions and instructions; perform simple tasks independently; perform complex tasks independently if she knows them well; make simple decisions; and relate adequately with other people (Tr. 643). She would have trouble maintaining a regular schedule or learning

---

[4]Reported by nurse practitioner Laura Lewis Mason.

new tasks without great difficulty, and she was not dealing well with stress. In Dr. Hill's opinion, plaintiff's difficulties were being caused by a combination of psychiatric, cognitive, and physical problems which "significantly interefere[ ] with her ability to function on a daily basis" (Tr. 643-44). Her diagnosis was major depressive disorder, moderately severe; below average cognitive functioning, most likely within the mentally retarded range; seizures, not under control; and hypertension, high blood pressure, high cholesterol, edema in her feet, and headaches (Tr. 644).

Notably, on a "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" form, Dr. Hill indicated plaintiff's "marked" limitations in several areas of mental functioning, including understanding and remembering complex instructions; carrying out complex instructions; ability to make judgments on complex work-related decisions; interacting appropriately with supervisors; and responding appropriately to usual work situations and changes in a routine work setting (Tr. 646-47). Dr. Hill noted further that plaintiff was not able "to work regularly because of seizures and because of depression" (Tr. 647).

The ALJ gave little weight to Dr. Hill's assessment, finding it to be based primarily on plaintiff's self-reporting–which the ALJ dismissed as not credible to the extent it was inconsistent with his RFC assessment (*see* Tr. 26). The ALJ also regarded Dr. Hill's assessment as having been "undercut" by plaintiff's contradictory statements regarding her placement in special education classes, as well as her testimony about activities of daily living reflecting an ability to function on a daily basis. The ALJ accorded greater weight to the assessments of the consultative psychiatric examiner and the state agency reviewer, finding these reports "more consistent" (Tr. 30) with treatment records from Lake Shore

Behavioral Health, where plaintiff received psychotherapy and psychiatric counseling during 2009-2011 (*see* Tr. 742-52).

Upon review of this evidence, the court finds that the ALJ's stated reasons for the weight accorded to the medical source statements of record about the nature and severity of plaintiff's impairments lack the specificity required by the regulations and rulings. To the contrary, as indicated by the discussion above, a reasonable reading of these statements reveals substantial and consistent support for Dr. Matthews' opinion indicating that plaintiff's uncontrolled seizure disorder caused interference with the attention and concentration needed to perform even simple work tasks on a regular basis. As the opinion of plaintiff's treating physician, well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record, it is entitled to controlling weight as a matter of law. The ALJ's determination to give the treating physician's opinion such little weight can only be interpreted by the court as an arbitrary substitution of his own judgment for competent medical source opinion evidence. *See Balsamo v. Chater*, 142 FR.3d 75, 81 (2d Cir. 1998) (ALJ cannot arbitrarily substitute his own judgment for competent medical opinion or set his own expertise against that of treating physician), *cited in Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008).

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on an incorrect application of the legal standards governing the evaluation of medical source

opinion evidence, and is not supported by substantial evidence. The Commissioner's determination must therefore be reversed.

The court further finds that, in light of substantial evidence in the record to support a determination of disability, and considering the long (more than seven year) pendency of plaintiff's applications for SSDI and SSI benefits covering the period of disability at issue; the number of previous adjudications by the agency; the likelihood "that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay …," *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (internal quotation marks and citations omitted); and in the exercise of discretion considering the "remedial nature and humanitarian aims of the Social Security Act," *Harzewski v. Chater*, 977 F. Supp. 217, 225 (W.D.N.Y.1997), remand to the Commissioner for further proceedings would serve no purpose.

Accordingly, plaintiff's motion for judgment on the pleadings (Item 10) is granted, the Commissioner's motion for judgment on the pleadings (Item 15) is denied, and the case is remanded to the Commissioner solely for calculation of benefits.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff, and to close the case.

So ordered.

                                              \s\ John T. Curtin
                                                JOHN T. CURTIN
                                        United States District Judge

Dated: November 12, 2014
p:\pending\2013\13-1025.ssa.nov3.2014